**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **STEPHEN KINGSTON and TED KINGSTON,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | **Case No. 2:04-cv-00156-DB-PMW** |
| **v.** | |
| **MARY ANN NELSON, et al.,** | **District Judge Dee Benson** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Dee Benson pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court are: (1) Stephen Kingston and Ted Kingston's (collectively, "Plaintiffs") motion to strike Mary Ann Nelson, et al.'s (collectively, "Defendants") motion for a continuance pursuant to rule 56(f) of the Federal Rules of Civil Procedure;[2] (2) Defendants' motion for an extension of time to complete discovery;[3] (3) Defendants' motion to compel and for sanctions;[4] (4) Plaintiffs' motion to strike Defendants' motion to compel, for sanctions, and for an extension of time to respond to Defendants' motion

---

[1] *See* docket no. 109.

[2] *See* docket no. 96.

[3] *See* docket no. 82.

[4] *See* docket nos. 84, 89.

to compel;[5] and (5) Plaintiffs' motion for sanctions pursuant to rule 37 of the Federal Rules of Civil Procedure.[6]  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda.  *See* DUCivR 7-1(f).

### I.  Plaintiffs' Motion to Strike Defendants' Motion for Rule 56(f) Continuance

In this motion, Plaintiffs ask the court to strike Defendants' motion for a rule 56(f) continuance.  On August 1, 2007, Judge Benson issued an order granting Defendants' motion for a rule 56(f) continuance.[7]  Accordingly, Plaintiffs' motion to strike is **MOOT**.

### II.  Defendants' Motion for Extension of Time to Complete Discovery

Defendants' motion seeks to extend the discovery deadline in this case by ninety (90) days.  Defendants assert that an extension is both necessary and appropriate because Plaintiffs have frustrated the discovery process.

In response, Plaintiffs urge the court to deny Defendants' motion.  Plaintiffs contend that Defendants were not diligent in conducting their discovery.  Accordingly, Plaintiffs argue that it has been Defendants, not Plaintiffs, who have frustrated the discovery process.

> Whether to extend or reopen discovery is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent abuse of that discretion.  Appellate decisions have identified several relevant factors in reviewing

---

[5]  *See* docket no. 100.

[6]  *See* docket no. 102.

[7]  *See* docket no. 108.

> decisions concerning whether discovery should be reopened,
> including:  1) whether trial is imminent, 2) whether the request is
> opposed, 3) whether the non-moving party would be prejudiced, 4)
> whether the moving party was diligent in obtaining discovery
> within the guidelines established by the court, 5) the foreseeability
> of the need for additional discovery in light of the time allowed for
> discovery by the district court, and 6) the likelihood that the
> discovery will lead to relevant evidence.

*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (citations omitted).

The court now turns to considering the above-referenced factors in this case.  First, a trial date has not been scheduled in this case, so trial is obviously not imminent.  Second and third, while it is true that Defendants' request is opposed, the court is not persuaded that Plaintiffs will be prejudiced by an extension of the discovery deadline.  Fourth, given the allegations of misconduct contained in the parties' written submissions, which amount to nothing more than petty finger-pointing, the court is unable to determine whether one party is solely responsible for frustrating the discovery process.  Accordingly, the court is left to assume that the blame for the delays in conducting discovery can be placed on both parties.  Fifth, as noted by Defendants, foreseeability is not a relevant factor in this case because Defendants are not seeking to conduct additional discovery; instead, they are merely seeking to complete discovery that was commenced prior to the expiration of the discovery deadline.  Sixth and finally, the court is convinced that the discovery is likely to lead to relevant evidence.

The court's consideration of these factors leads to the conclusion that the interests of both parties and this case will best be served by extending the discovery deadline.  This is particularly true in light of Judge Benson's decision to grant Defendants' motion for a rule 56(f) continuance.

*See* Fed. R. Civ. P. 56(f) (allowing for a continuance of a motion for summary judgment "to permit affidavits to be obtained or depositions to be taken or discovery to be had").  For these reasons, Defendants' motion for an extension of time to complete discovery is **GRANTED**.  Given the time that has elapsed since the filing of Defendants' motion, the court has determined that an extension of approximately ninety (90) days from the date of this order is appropriate.  Accordingly, the fact discovery deadline in this is hereby extended to January 11, 2008.

Given this extension, and pursuant to Judge Benson's August 1, 2007 order,[8] the court sets the following briefing schedule for Plaintiffs' motion for partial summary judgment.[9]  Plaintiffs will be entitled to file a new supporting memorandum, which shall be filed within thirty (30) days after expiration of the new fact discovery deadline.  Defendants' memorandum in opposition shall be filed within thirty (30) days after the date Plaintiffs' supporting memorandum is filed.  Plaintiffs' optional reply memorandum shall be filed within ten (10) days after the date Defendants' opposition memorandum is filed.

### III.  Defendants' Motion to Compel and Plaintiffs' Motion to Strike

#### A.  Plaintiffs' Motion to Strike

Rather than simply filing a memorandum in opposition to Defendants' motion to compel, Plaintiffs filed a motion to strike Defendants' motion and for an award of sanctions against Defendants.  Plaintiffs' motion also requests that Plaintiffs be provided with an opportunity to

---

[8]  *See* docket no. 108.

[9]  *See* docket no. 74.

file a memorandum in opposition to Defendants' motion to compel in the event that the court denies Plaintiffs' motion to strike.

The court is somewhat puzzled by Plaintiffs' counsel's decision to file a motion to strike, rather than simply opposing Defendants' motion.  First, in the court's view, all of the arguments set forth in Plaintiffs' motion to strike are equally suited for a memorandum in opposition to Defendants' motion to compel.  Second, all of the relief requested in Plaintiffs' motion to strike is equally available by way of a memorandum in opposition to a motion to compel.  *See* Fed. R. Civ. P. 37(a)(4)(B), (a)(4)(C) (providing for an award of reasonable expenses, including attorney fees, to a party who successfully opposes, either in whole or in part, a motion to compel). Finally, if Plaintiffs' counsel had simply filed a memorandum in opposition to Defendants' motion, it would have simplified matters for the court and obviated the need for the parties to brief a separate motion.

For these reasons, Plaintiffs' motion to strike Defendants' motion to compel, for sanctions, and for an extension of time to respond to Defendants' motion to compel is **DENIED**. However, the court will treat Plaintiffs' written submissions on that motion (i.e., supporting memorandum and reply memorandum) as an opposition to Defendants' motion to compel.

## B.  Defendants' Motion to Compel

The subject of Defendants' motion to compel is the May 14, 2007 deposition of Ted Kingston ("Ted").  Defendants ask the court to order Ted to appear again to be deposed and to specifically answer certain questions.  Defendants also request an award of sanctions against Ted,

pursuant to rule 37(a)(4)(A).  In essence, Defendants argue that the transcript of Ted's deposition speaks for itself and supports their motion to compel.  The court agrees.

The court finds several portions of Ted's deposition transcript to be particularly revealing. Very early on in the deposition, Defendants' counsel asked Ted if he had ever been deposed before, and Ted indicated that he had been deposed in another lawsuit.  Defendants' counsel then attempted to pursue a question about that lawsuit, which led to the following exchange between Defendants' counsel, Ted, and one of Ted's attorneys:

[Defendants' counsel, to Ted]:  In what case?

[Ted]:  I said nothing relating to this case.  It was another case.

[Defendants' counsel]:  What was the purpose of the deposition in that case?

[Ted]:  I was a defendant.

[Defendants' counsel]:  Who's the plaintiff in that case, do you know?

[Ted]:  I do.  I don't think I need to tell you though.

[Defendants' counsel]:  Well, you need to answer the questions.

[Ted]:  Well, I, I don't think it's any of your business who the plaintiff is in that case.  It's not related to this.  It's another business [sic].

[Defendants' counsel, to Ted's counsel]:  Are you gonna instruct your client to answer the questions or not?

[Ted's counsel no. 1]:  I'm not gonna instruct him to, no.

> [Defendants' counsel, to Ted]:  Are you refusing to answer the question?

> [Ted]:  I'm refusing to answer that question, yes.

Defendants' counsel then correctly explained some of the ground rules for a deposition to Ted.  When Defendants' counsel asked Ted if those rules were acceptable to him, Ted responded in the affirmative.  Defendants' counsel went on to pursue a line of questioning to determine whether Ted knew certain individuals and, if so, certain information about those individuals.  Defendants' counsel, Ted, and Ted's two attorneys then had the following exchange:

> [Defendants' counsel, to Ted]:  Okay.  And your brothers and sisters, can you give me their names, please?

> [Ted]:  I can give you my brother's name.  His name is – I'm not gonna give you my brother's name.  Why should I give you my brother's name?

> [Defendants' counsel]:  Are you refusing to answer the question?

> [Ted]:  I'm asking you why you want me to give him his – give you my brother's name.

> [Defendants' counsel]:  I think it's important that we get this straight.  This is an opportunity for me to ask you questions, and you to provide the answers.

> [Ted]:  I understand that.

> [Defendants' counsel]:  You don't get to ask me questions at all.  Do you understand that?

> [Ted]:  Okay.  Okay.  So then I refuse to answer because I don't think it's relevant to this case.

> [Defendants' counsel]:  Okay.  Let's go off the rec – actually, let's stay on the record.  This is critical to the case, in that

7

it impacts his knowledge of both The Order and his family.  If he refuses to answer the questions[,] I'm gonna terminate the deposition right now and seek a protective order – seek a motion to compel.  Are you gonna talk to your client about this, or is that what we're gonna do?

[Ted's counsel no. 1]:  I'm not gonna talk to him about it, . . . unless you can tell me why what you say are the issues in this case are really the issues in this case.  I don't see those as issues at all.

[Defendants' counsel]:  I think they are the issues.  And I think this is critical information.  So we just need to decide right now.  I'm gonna explore exactly who his family are [sic], who everyone is married to, their children, and all that information.  It's absolutely relevant to his knowledge of the practices in The Order.
Now are we gonna proceed forward?  Is he gonna answer these questions, or are we gonna stop it and see the judge?

[Ted's counsel no. 2]:  What we are – what we're doing with here – I think you are talking about your vision of [another] lawsuit.  This is not that lawsuit.
This is Ted Kingston's defamation lawsuit.  And he hasn't alleged that everything that was said in connection with the other thing is defamatory.  There's specific allegations of the defamation that he's made.
And, you know, if you can – if we can resolve it now, that's fine.  You can save yourself the trouble of going before the judge.  If you can explain how the questions you are asking are relevant to the specific allegations of defamation he's made, then I'm – I think we probably would instruct him to.
But I don't see right now.  If you can explain how they're relevant, then maybe you can enlighten us and we can proceed.

[Defendants' counsel]:  Well, I don't care to explain the entire theory of our case on the record other than what I already have.  I think it's clearly relevant.
Not only that, he's required to answer the questions anyway because this isn't – the deposition – relevance is not even a proper objection.  Or a reason to refuse to answer.  The only time that

would be appropriate is if the questions were so irrelevant that they
became, became oppressive or abusive.
　　　　Now, I don't know how about asking him about his family
is going to be oppressive or abusive.  So what are we gonna do?
Are we gonna proceed forward?  Is he gonna answer the questions,
or are we gonna stop it right now?

　　　　[Ted's counsel no. 2]:  I'm not instructing him not to
answer. . . . And Ted can decide what he's gonna do.  And if he
feels like it's – like he doesn't want to and it's gonna require a
judge to sort it out, then.

　　　　[Defendants' counsel, to Ted]:  Are you gonna answer the questions?

　　　　[Ted]:  I think you might as well talk to the judge because I
don't see –

　　　　[Defendants' counsel]:  Okay.

　　　　[Ted]:  – why I have to tell you anything like that.

　　　　[Defendants' counsel]:  All right.  Let's stop right now.

　　　These portions of the transcript demonstrate to the court that Ted and his counsel have

little or no regard for rule 30 of the Federal Rules of Civil Procedure, which governs depositions.

Ted's and his counsel's actions during Ted's deposition directly violated several provisions of

that rule.  Ted's refusal to answer the questions posed by Defendants' counsel without an

explanation of their relevance was wholly inappropriate.  *See* Fed. R. Civ. P. 30(d)(1) ("A person

may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

limitation directed by the court, or to present a motion under [r]ule 30(d)(4).").  Further, given

the subject matter of Defendants' counsel's questions to Ted, Ted's counsel's failure to instruct

Ted that he was obligated to answer those questions was likewise inappropriate.  *See id*.

Pursuant to rule 30, Ted's counsel had two options, neither of which was exercised.  First, they could have lodged objections to Defendants' counsel's questions for the record, but Ted would still have been required to answer the questions, with his testimony being taken subject to the objections.  *See* Fed. R. Civ. P. 30(c) ("All objections made at the time of the examination to the qualifications of the officer taking the deposition, to the manner of taking it, to the evidence presented, to the conduct of any party, or to any other aspect of the proceedings shall be noted by the officer upon the record of the deposition; *but the examination shall proceed, with the testimony being taken subject to the objections*." (emphasis added)).  Second, if Ted's counsel believed that Defendants' counsel was conducting the deposition in bad faith or in a way that unreasonably annoyed, embarrassed, or oppressed Ted, they could have stopped the deposition and sought a protective order under rule 26(c) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 30(d)(4) ("At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in [r]ule 26(c).").

Incredibly, based on the transcript of the deposition, Plaintiffs assert that Defendants' counsel failed to satisfy his obligation to make a good faith, reasonable effort to confer or attempt to confer with Plaintiffs on the disputed matter during the deposition.  *See* Fed. R. Civ. P. 37(a)(2)(B) (providing that a motion to compel "must include a certification that the movant has

in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action"); DUCivR 37-1(a) (providing that "the court will not entertain any discovery motion, . . . unless counsel for the moving party files with the court, at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion").  Plaintiffs also claim that Defendants' motion to compel does not contain the required statement or certification that Defendants satisfied that obligation.  *See* Fed. R. Civ. P. 37(a)(2)(B); DUCivR 37-1(a).  Both of these arguments are without merit.

Plaintiffs' argument presupposes that Defendants' counsel was somehow obligated to engage in a conversation concerning the relevance of his questions in order to satisfy his obligations under rule 37 and civil rule 37-1.  This position, however, is contrary to the plain language of rule 30.  Nothing in rule 30 requires an attorney to explain the relevance of questions during a deposition.  In addition, relevance is an issue to be determined by the court when evidence is sought to be admitted, not by the parties during a deposition.  *See* Fed. R. Evid. 401, 402.  Requiring an explanation concerning the relevance of deposition questions would not only frustrate the deposition and discovery process, as is evident from Ted's deposition transcript, but it would also invite any deponent to refuse to answer any deposition question based on a relevance objection.  Further, it would be contrary to the broad and liberal construction that the discovery rules are to be accorded.  *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and

liberal treatment to effect their purpose of adequately informing the litigants in civil trials."). Accordingly, Defendants' counsel was under no obligation to provide any explanation concerning the relevance of his questions to Ted or his counsel.  As noted earlier, Ted's counsel had two options for addressing their objections to Defendants' counsel's questions, neither of which was exercised.

Further, on at least two separate occasions during the deposition, Defendants' counsel correctly explained several of the ground rules for depositions to Ted and his counsel.  Given the unreasonable position taken by Ted and his counsel in violation of rule 30, the court is unaware of anything more that Defendants' counsel could have done to fulfill his obligation to confer with Ted and his counsel to reach agreement on the disputed issue.  Accordingly, the court has determined that Defendants' counsel did satisfy his obligations under rule 37 and civil rule 37-1. *See* Fed. R. Civ. P. 37(a)(2)(B); DUCivR 37-1(a).  The court has also determined that Defendants' motion to compel contains an adequate statement or certification that said obligation was satisfied.  *See* Fed. R. Civ. P. 37(a)(2)(B); DUCivR 37-1(a).

Based on the foregoing, Defendants' motion to compel and for sanctions is **GRANTED**. Ted is ordered to again appear for his deposition at some point prior to expiration of the new fact discovery deadline, as noticed up by Defendants, and he and his counsel are ordered to abide by the requirements of rule 30 during that deposition.

The court now turns to the award of sanctions.  The court has determined that Defendants are entitled to an award of sanctions in connection with Defendants' motion to compel, pursuant to rule 37(a)(4)(A).  The court has already concluded that Defendants' counsel made the good

faith efforts described in rule 37 and civil rule 37-1.  In addition, based on the court's analysis of

Plaintiffs' position, the court has also determined that it was not "substantially justified."  Fed. R.

Civ. P. 37(a)(4)(A).  Accordingly, Plaintiffs shall pay Defendants' reasonable expenses incurred

in bringing their motion to compel, including attorney fees.  *See id*.

In addition, the court has determined that Ted's and his counsel's conduct during Ted's

May 14, 2007 deposition justifies an award of sanctions in connection with that deposition,

pursuant to rule 30.  *See* Fed. R. Civ. P. 30(d)(3) ("If the court finds that any impediment, delay,

or other conduct has frustrated the fair examination of the deponent, it may impose upon the

persons responsible an appropriate sanction, including the reasonable costs and attorney's fees

incurred by any parties as a result thereof.").  Accordingly, Plaintiffs shall also pay Defendants'

reasonable costs and attorney fees incurred in connection with Ted's May 14, 2007 deposition.

In order to obtain their award, Defendants shall submit to the court within ten (10) days of

the date of this order an affidavit and cost memorandum detailing (1) the reasonable expenses,

including attorney fees, incurred in bringing their motion to compel and (2) the reasonable costs

and attorney fees incurred in connection with Ted's May 14, 2007 deposition.  After receipt of

that affidavit and cost memorandum, and provided that the stated expenses, costs, and fees are

reasonable, the court will enter an order finalizing the award.

### IV.  Plaintiffs' Motion for Rule 37 Sanctions

In this motion, Plaintiffs assert that Defendants have failed to fulfill their discovery

obligations with respect to depositions, interrogatories, and requests for production of

documents.  Accordingly, Plaintiffs ask the court to impose rule 37 sanctions on Defendants and

to award Plaintiffs their reasonable expenses, including attorney fees, caused by Defendants'
alleged failure to fulfill their discovery obligations.

### A. Depositions

Plaintiffs argue that "Defendants refused, without justification, to appear for their
properly noticed depositions on dates their attorney had already cleared as available for
depositions." After reviewing the affidavits submitted by both Plaintiffs' counsel[10] and
Defendants' counsel,[11] as well as the exhibits to those affidavits, the court has concluded that
Plaintiffs' argument is both inaccurate and misleading.

In a letter dated April 16, 2007, Defendants' counsel informed Plaintiffs' counsel of six
individuals that Defendants' counsel wanted to depose. Defendants' counsel indicated six
specific dates on which he wanted "to schedule these six depositions." Defendants' counsel also
provided three alternate dates, in case any of the six specific dates was "inconvenient" for
Plaintiffs' counsel.

One week later, Plaintiffs' counsel sent a letter to Defendants' counsel. In that letter,
Plaintiffs' counsel stated that he believed Defendants' counsel had made the nine dates identified
in his letter available for any depositions, notwithstanding Defendants' counsel's clear statement
in his letter that he wanted to use those dates for six identified individuals. Plaintiffs' counsel
also indicated that one of the identified dates was unavailable because it was a holiday and that

---

[10]   *See* docket no. 104.

[11]   *See* docket no. 93.

14

he was unavailable on two of the other dates.  As to the remaining six dates, Plaintiffs' counsel's letter stated:  "Since you finally have given some dates you are available for depositions, you have saved me the trouble of contacting you to obtain dates for our own depositions.  Please see the accompanying Notice of Depositions, which reserves May 15, 18, 29, and 30 for the depositions of [four Defendants]."  Plaintiffs' counsel's letter went on to state that the two remaining days were left for "any depositions [Defendants' counsel] wish[ed] to take" and that two of the six identified individuals were available on those two dates.  As indicated in the letter, Plaintiffs' counsel sent a deposition notice for four Defendants on the same date as the letter.

Several days later, Defendants' counsel responded to Plaintiffs' counsel's letter and deposition notice.  In his letter, Defendants' counsel reiterated his desire to use the six available dates for the depositions of the individuals identified in his original letter.  Defendants' counsel also stated:  "I do not believe it is fair or ethical for you to try to take advantage of my attempt to comply with our ethical obligations and to offer the simple courtesy of trying to work out deposition dates prior to setting the dates.  If you refuse to withdraw your notice of deposition, which I believe is based on unethical conduct, I will be forced to file a motion for a protective order."  Defendants' counsel's letter closed by stating that he hoped that he and Plaintiffs' counsel could "work out this issue by accommodating both of our deposition needs."

Plaintiffs' counsel responded to Defendants' counsel's letter one week later.  In that letter, Plaintiffs' counsel stated:  "You offered dates for depositions, which I have as much right to use as you.  I timely served a proper Notice of Depositions of the five [sic] party defendants,

using only four of the days you made available.  I shall keep those deposition dates as scheduled."

The court finds this correspondence revealing.  In a courteous manner, Defendants' counsel notified Plaintiffs' counsel of nine available dates on which he wished to take the depositions of six identified individuals and requested Plaintiffs' counsel's cooperation in scheduling those depositions prior to sending out actual deposition notices.  In response, Plaintiffs' counsel eliminated three of those nine dates as being unavailable and then proceeded to schedule his own depositions, without prior notice to Defendants' counsel, on the dates that Defendants' counsel had previously indicated that he wished to conduct his depositions of six specific individuals.  In doing so, Plaintiffs' counsel stated that he believed that he had "as much right to use" the deposition dates as Defendants' counsel.  While this may have been true if Defendants' counsel had suggested dates for any party's deposition in his original letter, he did not do so.  Instead, Defendants' counsel specifically requested to be able to use those dates for his depositions.  To further demonstrate his lack of courtesy, Plaintiffs' counsel made no effort to contact Defendants' counsel before sending out the deposition notice.

The court finds Plaintiffs' counsel's conduct in relation to this issue to be both unprofessional and discourteous.  Further, given the parties' written communications, the court finds it disingenuous for Plaintiffs' counsel to now claim that Defendants' counsel was solely to blame for the parties' disagreement about the scheduling of depositions.

Plaintiffs' counsel also attempts to assign blame to Defendants' counsel on the issue of deposition scheduling because of events that allegedly transpired in another lawsuit.  In essence,

16

Plaintiffs' counsel alleges that because Defendants' counsel did not make witnesses available for depositions in another lawsuit, the depositions in this case presented Plaintiffs' "last chance" to depose Defendants. Plaintiffs' counsel uses this allegation as support for his conduct in the scheduling of depositions and the above-referenced written correspondence.

This type of argument is not persuasive to the court. The court is not interested in self-serving and unsubstantiated allegations about a party's misconduct in other cases or lawsuits. This court has no doubt that the court presiding over the case referenced by Plaintiffs' counsel is capable of handling any allegations of misconduct based on the facts of that particular case. At the same time, it is doubtful that said court would be persuaded by self-serving and out-of-context allegations made about a party's misconduct in this or any other case. Consistent with those principles, this court will handle any allegations of misconduct in this case based on the facts of this case.

It is clear to the court that the parties had some disagreement about the scheduling of depositions in this case. It is also clear to the court that Defendants' counsel's conduct relating to that disagreement does not justify the imposition of rule 37 sanctions.

### B. Interrogatories

Plaintiffs argue that Defendants have failed to answer Plaintiffs' interrogatories. The court's review of the affidavits submitted by both Plaintiffs' counsel[12] and Defendants' counsel,[13]

---

[12] *See* docket no. 104.

[13] *See* docket no. 93.

as well as the exhibits to those affidavits, leads the court to conclude that Plaintiffs' argument is without merit.

On December 27, 2006, Plaintiffs' served their first set of discovery requests, including interrogatories, on Defendants.  The responses to the interrogatories were due within thirty days. *See* Fed. R. Civ. P. 33(b)(3).

Defendants provided their responses to Plaintiffs' discovery requests on April 13, 2007. As correctly noted by Plaintiffs, the responses to the interrogatories were provided well past the thirty-day deadline.  *See id*.  However, Plaintiffs sought no court action at that time based on Defendants' tardy responses.  Included in Defendants' responses was a blanket objection to Plaintiffs' interrogatories, which stated:  "Defendants object to all interrogatories in that notwithstanding that they are ostensibly numbered one through eleven, they far exceed 25 in number including all discrete subparts."

Over a week later, Plaintiffs' counsel sent a letter to Defendants' counsel in response to Defendants' objection concerning the interrogatories.  Plaintiffs' counsel correctly explained that "any party" is allowed to "serve upon any other party" up to twenty-five interrogatories.  Fed. R. Civ. P. 33(a).  Because there were two Plaintiffs, Plaintiffs' counsel further explained that Plaintiffs were actually entitled to fifty total interrogatories.  He also correctly noted that Defendants' counsel may have failed to consider rule 33(b)(1), which requires a party objecting to any interrogatory to still "answer to the extent the interrogatory is not objectionable."  Fed. R. Civ. P. 33(b)(1).  Accordingly, Plaintiffs' counsel believed that Defendants' counsel should have, at minimum, answered what he viewed to be the first twenty-five interrogatories.  All of this

18

notwithstanding, Plaintiffs' counsel indicated that he was willing to withdraw certain interrogatories.  In closing, Plaintiffs' counsel indicated that if he did not hear from Defendants' counsel by May 1, 2007, he would conclude that Defendants' counsel was "unwilling to discuss amending [the] discovery responses," and he would "proceed accordingly."

Although Defendants' counsel did not respond until July 3, 2007, Plaintiffs never sought a motion to compel with respect to Defendants' responses to the first set of interrogatories.  In his July 3 letter, Defendants' counsel indicated that he had considered Plaintiffs' counsel's letter and that he would "likely agree" to Plaintiffs' counsel's proposed alterations to the interrogatories. He asked that Plaintiffs serve a new set of interrogatories incorporating the changes proposed by Plaintiffs' counsel.

On July 11, 2007, Plaintiffs' counsel responded to Defendants' counsel's letter.  In that letter, Plaintiffs' counsel indicated that he had included with the letter a set of modified interrogatories and that he expected Defendants' responses to that set of modified interrogatories on or before August 14, 2007.  However, Plaintiffs' counsel then indicated that Defendants' counsel was required to notify him by July 20, 2007, if the modified interrogatories would "resolve the matter."  Plaintiffs' counsel further indicated that if he did not receive a response by July 20, he would conclude that the parties had "reached an impasse" and would proceed to the court "with an appropriate motion."  According to Plaintiffs' counsel, he did not receive a response by the stated deadline of July 20.

It is this final piece of correspondence that leads the court to the conclusion that Plaintiffs' argument is without merit.  In one portion of the letter, Plaintiffs' counsel sets a

19

deadline of August 14, 2007, for responding to the modified interrogatories, consistent with the thirty-day requirement of rule 33.  *See* Fed. R. Civ. P. 33(b)(3).  Later, however, he also set a deadline of July 20, 2007, for responding to what he terms as an "offer" to accept the modified interrogatories as a resolution to the matter.  However, by serving a new set of interrogatories, Plaintiffs' counsel rendered his July 20 deadline a nullity.

As noted earlier, Plaintiffs served their first set of interrogatories on Defendants, to which Defendants responded with a blanket objection.  While it appears that Plaintiffs could have filed a motion to compel with respect to that first set of interrogatories, they did not.  Instead, on July 11, 2007, Plaintiffs' counsel served Defendants with a new, modified set of interrogatories, and it is those interrogatories that are addressed in Plaintiffs' motion for rule 37 sanctions.

Although Plaintiffs' counsel unilaterally set a deadline of July 20 for the "offer," he provided himself with only one option at the expiration of that deadline–to file a motion to compel and/or for sanctions under rule 37 with respect to the new set of interrogatories. However, upon being served with the new set of interrogatories, Defendants were provided with thirty days from the date they were served to respond to them, *see id*., thereby rendering the July 20 deadline a nullity.  Even though Plaintiffs, as promised, filed their motion for rule 37 sanctions after the expiration of the July 20 deadline, it was also filed before the deadline for Defendants' responses to the new set of interrogatories.  Accordingly, with respect to the new set of interrogatories, Plaintiffs' motion is premature.  Until the deadline for responding to the new set of interrogatories has passed, Defendants cannot be subject to rule 37 sanctions for failing to respond to said interrogatories.

## C.  Requests for Production of Documents

Plaintiffs argue that Defendants' responses to the requests for production of documents are deficient because they do not indicate "who provided which documents, and what documents are responsive to which document requests."  Accordingly, Plaintiffs request that the court order Defendants to amend their responses to provide that information.

As noted by Defendants, however, Plaintiffs' argument on this point does not provide enough detail for the court to provide Plaintiffs with the relief they request.  Plaintiffs' entire argument on this point consists of five sentences, one of which is a quotation of the relevant rule.  Most importantly, Plaintiffs do not identify the particular responses to their requests for production that they view as inadequate or deficient.  *See* DUCivR 37-1(b) (providing that motions under rule 37 "must be accompanied by a copy of the discovery request, the response to the request to which objection is made, and a succinct statement, separately for each objection, summarizing why the response received was inadequate").  Accordingly, the court has determined that Plaintiffs' argument fails.

Based upon the foregoing, Plaintiffs' motion for rule 37 sanctions is **DENIED**.

* * * * *

In summary, **IT IS HEREBY ORDERED:**

1.      Plaintiffs' motion to strike Defendants' motion for a rule 56(f) continuance[14] is **MOOT**.

---

[14]  *See* docket no. 96.

21

2.      Defendants' motion for an extension of time to complete discovery[15] is **GRANTED**.  The fact discovery deadline in this case is hereby extended to January 11, 2008.  Given this extension, and pursuant to Judge Benson's August 1, 2007 order,[16] the court sets the following briefing schedule for Plaintiffs' motion for partial summary judgment.[17]  Plaintiffs will be entitled to file a new supporting memorandum, which shall be filed within thirty (30) days after expiration of the new fact discovery deadline.  Defendants' memorandum in opposition shall be filed within thirty (30) days after the date Plaintiffs' supporting memorandum is filed.  Plaintiffs' optional reply memorandum shall be filed within ten (10) days after the date Defendants' opposition memorandum is filed.

3.      Plaintiffs' motion to strike Defendants' motion to compel, for sanctions, and for an extension of time to respond to Defendants' motion to compel[18] is **DENIED**.

4.      Defendants' motion to compel and for sanctions[19] is **GRANTED**.  Ted is ordered to again appear for his deposition at some point prior to expiration of the new fact discovery deadline, as noticed up by Defendants, and he and his counsel are ordered to abide by the requirements of rule 30 during that deposition.  As detailed in subsection B. of section III. above,

---

[15] *See* docket no. 82.

[16] *See* docket no. 108.

[17] *See* docket no. 74.

[18] *See* docket no. 100.

[19] *See* docket nos. 84, 89.

Defendants are awarded sanctions against Plaintiffs in connection with both Defendants' motion to compel and Ted's May 14, 2007 deposition.

5.      Plaintiffs' motion for rule 37 sanctions[20] is **DENIED**.

**IT IS SO ORDERED**.

DATED this 11th day of October, 2007.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[20]  *See* docket no. 102.